**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUDEAU BROWN, JR.,** <br> **Plaintiff,** | : <br> : <br> : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-7449** |
| **ALYRA J. PARKER, *et al.*,** <br> **Defendants.** | : <br> : <br> : | |

**MEMORANDUM**

**WEILHEIMER, J.** **NOVEMBER 19, 2026**

Plaintiff Judeau Brown, Jr., a pretrial detainee incarcerated at the Lancaster County Prison ("LCP"), initiated this civil rights action by filing a *pro se* Complaint asserting constitutional claims against the following Defendants in their respective individual capacities: Lancaster County Public Defenders Alyra J. Parker and Christopher Tallarico, Lancaster County Magistrate Judge Rodney Hartman, and LCP Warden Cheryl Steberger. Brown also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Brown leave to proceed *in forma pauperis* and dismiss the Complaint with the exception of his claims against Tallarico and Steberger for conspiring to retaliate against him in violation of the First Amendment.

## I. FACTUAL ALLEGATIONS[1]

Brown was arrested for burglary and theft charges on June 25, 2025, by Lancaster police officers pursuant to a warrant. (Compl. at 15.) His allegations against Judge Hartman and Parker stem from the preliminary hearing in his underlying criminal case held on July 1, 2025.[2] (*Id*. at 5, 8-17.) He claims that prior to the hearing, he intended to proceed *pro se*, testify on his own behalf, and offer evidence in support of an alibi defense. (*Id*. at 15.) When he arrived at the courthouse for his preliminary hearing, Parker approached him and said she was representing him. (*Id*.) He told Parker he wanted to proceed *pro se* and testify on his own behalf. (*Id*. at 5, 15.) Parker, who he described as a "dark-skinned black woman," refused telling him, "Men don't know shit" and made a derogatory comment about her dislike towards people like Brown who have light skin. (*Id*.) She said she was going to tell the judge to deny his request to represent himself and went into Judge Hartman's courtroom. (*Id*. at 15-16.) Parker returned and

[1] Brown's Complaint ("Compl.") consists of the form complaint available to unrepresented litigants and approximately twenty handwritten pages. (ECF No. 3.) He also attached two exhibits to his Complaint, which appear to be a copy of his state court docket and the preliminary hearing transcript in his underlying criminal case. (ECF No. 3-1.) The Court considers the entirety of the submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *See Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006).

[2] A review of public records reveals that, after the preliminary hearing was held in front of Judge Hartman on the date alleged for felony burglary and theft charges against Brown, the case was transferred to the Court of Common Pleas. *See Commonwealth v. Brown*, MJ-02203-CR-0000140-2025 (M.J. Lancaster). Brown also attached a copy of the Magisterial District's state court docket. (ECF No. 3-1 at 2-4.) An information was subsequently filed against him, and the case is currently pending trial. *See Commonwealth v. Brown*, CP-36-CR-0002788-2025 (C.P. Lancaster). The public record further reveals several motions and requests Brown has filed *pro se*. (*Id*.)

informed him that the judge was going to deny his *pro se* request and she was representing him, so "too bad" and made another derogatory comment about his skin. (*Id.* at 16.) She then noticed "MAGA" writings on his paperwork and said she didn't "like Trump supporters, just plead guilty, and waive the preliminary" hearing. (*Id.*) He replied that he had a video on Instagram showing him in a club in Delaware at the time of the burglary for his alibi defense, but once she saw "MAGA" and "Build The Wall" on his Instagram account, she said, "Oh no, we not doing this Trump stuff, do not talk when we go in the courtroom." (*Id.*) During the hearing, Brown requested to speak but after Judge Hartman saw Parker shaking her head, he told Brown, "No." (*Id.* at 17.) He attached a copy of the preliminary hearing transcript, which reflects an unidentified "voice" asked to speak, possibly Brown, and Judge Hartman said, "No." (ECF No. 3-1 at 25.) The transcript reflects when the person asked to speak, Parker was challenging the prosecution's witness, who was a police officer that testified Brown's shoe footprints were a match to the footprints at the scene of the burglary.[3] (*Id.*) The transcript also reflects Parker argued in support of the dismissal of the burglary charges against Brown, but Judge Hartman did not grant her dismissal request, finding sufficient evidence for purposes of the preliminary hearing. (*Id.* at 27-33.) After the preliminary hearing, "all charges were bound over" and Steberger has kept Brown in pretrial detention at LCP based on Judge Hartman's orders. (Compl. at 17.) He claims Steberger is a proper defendant for "accepting him into pretrial

[3] The officer testified there were footprints leading up to the guitars stolen during the burglary. (ECF No. 3-1 at 13-15.) The officer was subsequently contacted by out of state law enforcement officers that the stolen guitars had been recovered. (*Id.* at 17.) One of the stolen guitars was recovered in a store in New York, and the store employee took a copy of the person's ID who sold the store the guitar. (*Id.*) The ID reflected Brown's full name, date of birth, and photograph. (*Id.*) A detective in Maryland subsequently reached out to the officer about Brown's arrest in an unrelated incident where his shoes were recovered. (*Id.* at 18-19.) The officer received the photographs of Brown's shoes, which he testified from his experience, were an identical match to the footprints at the scene of the burglary. (*Id.* at 19.)

detention without being afforded due process." (*Id.*)

Brown next alleges that on June 22, 2026, Tallarico, the Chief Public Defender, approached him at the Lancaster County Courthouse and threatened him. (*Id.* at 5, 17-18.) Specifically, he claims Tallarico said, "You're the guy who disrespected Parker at the preliminary hearing and your letter with that MAGA stuff, I'm going to get you hurt while you're in prison since you love Trump so much, you should apologize to her." (*Id.* at 17.) Brown responded that he was not scared, and Tallarico allegedly replied, "Cool, I'll also tell the Warden to go into your cell and destroy your legal papers, I know about your pretrial Federal Habeas, about you not being able to speak."[4] (*Id.* at 18.) Brown claims while he was in his cell at the LCP on August 5, 2026, Steberger, along with a team of officers, announced a "shakedown." (*Id.*) He alleges Steberger "singled out [his] cell and stated, 'I want Brown, if you file a grievance, things will get worse.'" (*Id.*) As he was walking away from his cell per Steberger's orders, she said, "Stop disrespecting Parker with that Trump garbage." (*Id.*) He "overheard papers being ripped and thrown around." (*Id.*) When he returned to his cell, his court transcripts[5] and filings "were ripped in pieces." (*Id.*)

Brown brings § 1983 conspiracy claims, in addition to claims for violation of his rights under the First, Sixth, and Fourteenth Amendments. (*Id.* at 5-6, 19-23.) Specifically, he claims Parker, Hartman, and Steberger conspired against him because of his race, gender, and political

---

[4] Brown filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 on December 8, 2025, that is pending in this Court, in which he claims his pretrial detention is unlawful because probable cause was not established during his preliminary hearing, and his rights to self-representation and due process were violated. *See Brown v. Steberger*, No. 25-6916 (E.D. Pa. (ECF No. 2 at 7-8)).

[5] The Court recognizes Brown attached the preliminary hearing transcript to his Complaint, but it is unclear which transcripts he is referring to at this early stage of the proceedings.

affiliation to deprive his liberty by continued pretrial detention without due process during the preliminary hearing. (*Id.* at 18-23.) He asserts Parker and Hartman also violated the Equal Protection Clause during the preliminary hearing. (*Id.* at 26.) He brings claims against Tallarico and Steberger for conspiring to retaliate against him in violation of the First Amendment based on "disapproval of Brown's political beliefs and accessing courts, to destroy [his] court hearing transcripts." (*Id.* at 6, 24-25.) As relief, Brown requests money damages and injunctive relief against Judge Harman to force a new preliminary hearing and to stop the ongoing violation of depriving his "liberty, in pretrial custody, without due process." (*Id.* at 6.)

## II. STANDARD OF REVIEW

The Court grants Brown leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Brown is proceeding *pro se*, the Court construes his allegations liberally.

*Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

The vehicle by which constitutional claims alleging violations of civil rights may be asserted in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Related to Criminal Prosecution

#### 1. Improper Claims for Relief

Brown brings claims against Judge Hartman, Parker, and Steberger related to the evidence presented at his preliminary hearing in his underlying criminal case, seeking injunctive relief to force a new preliminary hearing to stop the alleged ongoing violation of depriving his "liberty, in pretrial custody, without due process." (Compl. at 6.) He contends the evidence presented at the preliminary hearing where Judge Hartman presided and Parker was his defense attorney did not warrant a probable cause finding and, as a result, he is unlawfully detained at the LCP. (*Id*. at 17, 22-23.) He claims Steberger is a proper defendant for "accepting [him] into pretrial detention without being afforded due process." (*Id*. at 17.)

When a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); s*ee, e.g., Duran v. Thomas*, 393 F. App'x 3, 4 (3d Cir. 2018) (*per curiam*) (affirming that § 2241 petition was proper mechanism for pretrial detainee to

bring claims of warrantless arrest, detention without probable cause hearing, and speedy trial violation). Indeed, Brown has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 that is pending in this Court, in which he claims his pretrial detention is unlawful because probable cause was not established during his preliminary hearing, and his rights to self-representation and due process were violated. *See Brown*, No. 25-6916 (ECF No. 2 at 7-8 (challenging basis for pretrial detention and requesting immediate release from pretrial custody and a new preliminary hearing)).[6] The Court will accordingly dismiss any claims seeking *habeas* relief for failure to state a claim since the request to force a new preliminary hearing challenges the fact of Brown's continued confinement.[7] *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("Just as in *Heck*, whenever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.").

**2. Remaining Claims against Judge Hartman and Parker**

Brown also asserts Parker and Hartman conspired against him because of his race, gender, and political affiliation, and violated the equal protection clause during his preliminary hearing. (Compl. at 5-6, 19, 26.) As an initial matter, judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so

[6] To the extent Brown intended to bring a claim for ineffective assistance of counsel based on Parker's failure to present evidence of his alibi defense or other claims related to his pending criminal charges, if he is ultimately convicted and seeks to challenge his conviction in federal court based on ineffective assistance of counsel or other grounds, his only avenue for doing so is a *habeas* petition filed pursuant to 28 U.S.C. § 2254 after exhausting state remedies. *See Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (*per curiam*) ("The portions of Davis's complaint that . . . charge his attorney with constitutionally inadequate representation, and challenge his sentence fall squarely within *Preiser* and cannot be brought under § 1983.").

[7] The dismissal of these claims does not preclude Brown from continuing to challenge his criminal charges in state court nor does it provide any comment on the merits of any claims contained in his pending § 2241 petition for a writ of *habeas corpus*.

long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *see also Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Brown takes issue with how Judge Hartman handled the preliminary hearing and the decisions made during that hearing. However, as Brown's claims against Judge Hartman are based on acts he took in his judicial capacity while presiding over a criminal hearing in which he had jurisdiction, Judge Hartman is entitled to absolute judicial immunity from his claims. *See, e.g., Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity); *Buchanan v. Vanhorn*, No. 24-0600, 2024 WL 665341, at *3 (E.D. Pa. Feb. 16, 2024) (dismissing constitutional claim against a judge on immunity grounds based on the manner in which she handled plaintiff's preliminary hearing because the judge was "presiding over [plaintiff's] criminal case for which she clearly had jurisdiction to act").

His claims against Parker fare no better. An attorney performing the traditional functions of counsel – whether privately retained, court-appointed, or a public defender – is not a state actor for purposes of § 1983. *See Gannaway v. Stroumbakis*, 842 F. App'x 725, 730 (3d Cir. 2021) (noting that "[a] privately retained attorney clearly does not act under color of state law, and . . . that 'no color of state law attache[s] to the functions of court-appointed counsel.'" (citation omitted)); *see also Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *see also Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (*per curiam*) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him."). Therefore, Parker's status as a court-appointed attorney does not by itself make her a state actor subject to suit under § 1983. *See Angelico*, 184 F.3d at 277.

Nor does Brown allege a plausible basis to deem Parker a state actor. He asserts that Parker conspired with Judge Hartman to deny him the right to proceed *pro se*, present his alibi defense, and participate in his preliminary hearing because of his race, gender, and political affiliation. (Compl. at 5-6, 19, 26.) The United States Supreme Court has recognized that an otherwise private person acts "under color of" state law when he or she enters into a conspiracy

with state officials to deprive another of his or her federal rights. *See Dennis*, 449 U.S. at 27-28. In *Tower v. Glover*, 467 U.S. 914 (1984), the Supreme Court applied this rule to facts in which a former criminal defendant alleged a conspiracy between his public defender and state officials to deny him of his Constitutional rights. In its analysis, the Court first reaffirmed its holding in *Dennis*. *See Tower*, 467 U.S. at 920. But the Court determined that "public defenders have no immunity from [section] 1983 liability for intentional misconduct of the type alleged here." *Id.* at 921. As such, if a plaintiff is able to allege properly that defense counsel conspired with state officials to deprive him of his rights under the Constitution, then defense counsel could be considered a state actor for the purposes of liability under section 1983. *See Durham v. City & County of Erie*, 171 F. App'x 412, 415 (3d Cir. 2006) (*per curiam*) (citing *Tower* and holding that defense counsel may be sued under § 1983 if he conspires with a state actor, irrespective of whether the co-conspiratorial state actor is himself immune from suit). However, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010)). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Brown does not assert facts to support his conspiracy claim. He claims prior to the hearing, he told Parker he wished to proceed *pro se* and she refused to let him, and insulted men and people with his skin color. (Compl. at 5, 15.) She then told him she was going to tell the judge to deny his request to represent himself and went into Judge Hartman's courtroom. (*Id.* at 15-16.) Parker returned and informed him that the judge was going to deny his *pro se* request and she was representing him, so "too bad" and made another derogatory comment about his skin. (*Id.* at 16.) After she noticed "MAGA" writings on his paperwork and other political

affiliations with President Trump, she told him to just plead guilty, waive his preliminary hearing, and would not look at a video for his alibi defense. (*Id.*) She also told him not to speak during his preliminary hearing. (*Id.*) During the hearing, a "voice – possibly Brown – requested to speak but after Judge Hartman saw Parker shaking her head, he said "No." (*Id.* at 17.) There are no factual allegations that indicate the judge shared in Parker's alleged intention to deprive Brown of representing himself or treat him differently based on his race, gender, or political affiliation and entered into a conspiratorial agreement to violate his rights. Instead, the factual allegations regarding issues related to Brown's race, gender, and political affiliation are based solely on Parker's comments she made to Brown before the preliminary hearing. The only interaction even alleged between Parker and Judge Hartman was that Parker went into the courtroom prior to the hearing to tell Judge Hartman to deny Brown's request to represent himself. But Brown has not pleaded any facts that plausibly suggest a meeting of the minds between Parker and Judge Hartman. *See Twombly,* 550 U.S at 556 (holding that a plaintiff claiming conspiracy must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

In fact, the preliminary hearing transcript attached to the Complaint reflects Parker advocating for dismissal of Brown's burglary charge for a lack of probable cause, that Judge Hartman disagreed with Parker's arguments, and denied her request to dismiss the charges. *See Vorchheimer v. Philadelphian Owners Ass'n,* 903 F.3d 100, 112 (3d Cir. 2018) (explaining that if a plaintiff's "own exhibits contradict [his] allegations in the complaint, the exhibits control"). When the "voice" – possibly Brown – asked to speak, Parker was challenging the prosecution's presentation of testimony from a police officer that Brown's shoe footprints were a match to the footprints at the scene of the burglary. (ECF No. 3-1 at 25.) Judge Hartman actually told Parker

he'd like to move on from the issues she continued to raise about the police officer's testimony and he was "beyond the footprints." (*Id.* at 24-25.) The transcript reflects Parker continued to argue in support of the dismissal of the burglary charges based on the testimony presented, but Judge Hartman did not grant her dismissal request, finding sufficient evidence for purposes of the preliminary hearing. (*Id.* at 26-33.) Given his detailed factual averments as well as the content of the transcript he attached to the Complaint without any suggestion of a conspiratorial agreement, Brown has failed to allege the plausible existence of a conspiracy between Parker and Judge Hartman to support that Parker is a state actor. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) ("A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions." (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990))). Accordingly, his constitutional claims against Parker are also not plausible and will be dismissed.

**B. First Amendment Retaliation Claims against Tallarico and Steberger**

Brown next brings claims against Tallarico and Steberger retaliating against him in violation of the First Amendment based on "disapproval of Brown's political beliefs and accessing courts, to destroy [his] court hearing transcripts." (Compl. at 6, 25.) In order to state a plausible First Amendment retaliation claim, "a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks omitted);

*see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). As discussed, a private party like Tallarico "'who corruptly conspire[s]' with a state official will be considered a state actor under § 1983." *Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (*per curiam*) (quoting *Great W. Mining*, 615 F.3d at 175-76).

Brown alleges that on June 22, 2026, Tallarico threatened him and said, "You're the guy who disrespected Parker at the preliminary hearing and your letter with that MAGA stuff, I'm going to get you hurt while you're in prison since you love Trump so much, you should apologize to her." (Compl. at 17.) Tallarico then allegedly said he knew about Brown's federal *habeas* case and would "tell the Warden" to destroy his legal papers in his cell. (*Id*. at 18.) He claims Steberger subsequently announced a "shakedown" on August 5, 2026, ordered him out of his cell, and said, "Stop disrespecting Parker with that Trump garbage." (*Id*.) When he returned to his cell, his court transcripts and filings "were ripped in pieces." (*Id*.) At this early stage of the litigation, the Court will permit the First Amendment retaliation claims to proceed against Tallarico and Steberger in their individual capacities based on Brown's allegations.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Brown leave to proceed *in forma pauperis* and dismiss all federal claims against Judge Hartman and Parker with prejudice as amendment would be futile. *See Grayson v. Mayview State Hosp*., 293 F.3d 103, 108, 110 (3d Cir. 2002). His claims for injunctive relief and challenging the underlying criminal proceedings will be dismissed without prejudice to him seeking *habeas* relief if appropriate. The Court will direct service of the Complaint on Brown's claims against Tallarico and Steberger for retaliating against him in violation of the First Amendment.

An appropriate Order follows, which provides further information about proceeding in this case.

**BY THE COURT:**

**GAIL A. WEILHEIMER, J.**